# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4713 | **DATE** | December 17, 2003 |
| **CASE TITLE** | DUMAS vs. INFINITY BROADCASTING CORP et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for summary judgment is granted. This action is dismissed in its entirety. Any pending motions are moot.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | DEC 1 8 2003 date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | |
| | Copy to judge/magistrate judge. | 03 DEC 17 PM 8:21 | date mailed notice |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CLIFF DUMAS,

    Plaintiff,

v.

INFINITY BROADCASTING
CORPORATION AND WUSN-FM

    Defendant

No. 03 C 4713

**DOCKETED**
**DEC 1 8 2003**

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On July 7, 2003, plaintiff Cliff Dumas's ("Dumas") two-count complaint alleging promissory estoppel and breach of contract was transferred to this court from the United States District Court for the District of New Mexico.[1] Discovery proceeded in the case, and pursuant to the agreed upon scheduling order, on October 30, 2003, defendants Infinity Broadcasting Corporation ("Infinity") and WUSN-FM ("WUSN") filed a motion for summary judgment. In that motion defendants argued, inter alia, that Dumas's claims for breach of contract and promissory estoppel were barred by the statute of frauds. For the following reasons, Infinity's motion for summary judgment is granted as to both counts of Dumas's complaint.[2]

---

[1] Plaintiff's original complaint, based on diversity jurisdiction, only alleged damages in excess of $25,000. However, it is now undisputed that plaintiff alleges damages exceeding $571,000. (Def.'s 56.1(a) Stmt. ¶ 8 and Pl.'s 56.1(b) Stmt. ¶ 8.)

[2] Infinity asserts, and provides evidence in support, that WUSN is not a separate legal entity capable of being sued. (Def.'s 56.1(a) Stmt. ¶ 7.) Plaintiff attempts to dispute this fact

1



## FACTS

The plaintiff, Cliff Dumas, is a radio personality who has been in the radio business for the past 24 years. Dumas was a resident of New Mexico at the time of the events giving rise to this dispute. Infinity is a Delaware corporation that owns and operates numerous radio stations, including WUSN. WUSN is a radio station in Chicago, Illinois. Scott Alan Aurand ("Case") is the Program Director for WUSN. Mr. Aurand goes by his "air name," Justin Case. In May of 2000, Dumas and Case entered into discussions about Dumas being hired for WUSN's morning show. No agreement was reached. Dumas accepted employment with a radio station in New Mexico.

Beginning in February of 2002, Dumas and Case entered into additional discussions about Dumas being hired for WUSN's new morning show. These discussions continued at least into May of 2002. The substance of these discussions is evidenced in a number of e-mails provided by Dumas, as well as Dumas's own testimony. Dumas alleges that on May 20, 2002, he was promised a job with Infinity. On May 30, 2002, Dumas resigned his position with his employer in New Mexico. Dumas also obtained a release from his employer and paid his employer an unspecified amount to terminate his contract. Sometime in June of 2002, it became clear to Dumas that he would not be employed by Infinity. This lawsuit followed.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

(Pl.'s 56.1(b) Stmt. ¶ 7), but does not provide sufficient evidentiary support to establish a genuine issue of material fact. Thus, it is undisputed that WUSN is not a separate entity capable of being sued, and, therefore, WUSN is dismissed from this case. Furthermore, if WUSN was capable of being sued, this court would grant it summary judgment on Dumas's claims with the same analysis used to grant Infinity summary judgment.

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." All evidence must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, inferences in favor of the nonmoving party must be legitimate and justifiable. Id. The court's function is not to weigh evidence or make credibility determinations, but to determine whether there is an issue for trial. Id. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

## ANALYSIS

### I.    CHOICE OF LAW

Federal courts sitting in diversity must apply the law of the forum state in which the court sits. Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir. 2000). Illinois has adopted the Restatement (Second) of Conflicts for resolving choice of law issues. Gramercy Mills, Inc. v. Wolens, 63 F.3d 569, 572 (7th Cir. 1995) (citing Palmer v. Beverly Enters., 823 F.2d 1105, 1108 (7th Cir. 1987). The Restatement's (Second) "significant contacts" approach "provides five factors relevant in making choice of law determinations [in contract disputes]: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; [and] (5) the domicile, residence, place of incorporation, and place of business of the parties." Id. In this case, plaintiff Dumas was domiciled in New Mexico. Defendant is incorporated in Delaware, with principal place of business in New York but also does business in Illinois. Negotiations were performed over the phone and via e-mail with both parties remaining in their respective locations. Thus, factors (1), (2) and (5) are evenly split. Plaintiff argues that factor

(3) weighs in his favor because he performed part of the alleged contract in New Mexico by buying out his contract from his previous employer, obtaining a release from that employer, and preparing to move his family and belongings from New Mexico to Illinois. Plaintiff also argues that he is the subject matter of the alleged contract, and, therefore, because he was located in New Mexico during the negotiations, factor (4) also weighs in favor of applying New Mexico law.

This court, however, is persuaded by defendant Infinity's arguments that factors (3) and (4) weigh in its favor. Plaintiff admits that the alleged contract was for a term of five years, with the option of renewing for an additional five years, for a total of ten years, and that this ten-year contract was to be performed solely in Chicago, Illinois. (Pl.'s 56.1(b) Stmt. ¶ 19, admitting Def.'s 56.1(a) Stmt. ¶ 19.) Thus, even assuming that plaintiff's preparation constitutes performance of the contract, the vast majority of the performance contemplated by the alleged contract was to take place in Illinois. The third factor, performance, therefore, favors the defendant's position that Illinois law should apply. See Palmer v. Beverly Enter., 823 F.2d 1105, 110 (7th Cir. 1987) ("Although performance [of the alleged contract] was to occur in all eight states, the majority of it [was to take] place in California and the third factor, performance, therefore favors the use of California law.") Finally, this court is persuaded that the performance of the job allegedly contracted for, not the plaintiff himself, is the subject matter of the alleged contract. See Id. (holding that the situs of the employment contract was the state where the majority of the contract was to be performed). Therefore, because Illinois has the most significant contacts to this case, this court will apply Illinois law.

## II. BREACH OF CONTRACT

### A. Statute of Frauds

The Illinois statute of frauds states that:

> No action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

740 ILCS 80/1. The defendant argues that plaintiff's claim for employment is barred by this statute. This court agrees that the statute of frauds applies to plaintiff's breach of contract claim. "The test to determine if an agreement is subject to the one-year provision of the statute of frauds is whether, when it was made, it was capable of full performance within one year, not whether full performance was likely." Silvestros v. Silvestros, 206 Ill. App. 3d 84, 563 N.E.2d 1084, 1086 (1st. Dist 1990)(citations omitted). Plaintiff claims that he had a five-year contract with the defendant. (Pl.'s 56.1(b) Stmt. ¶ 19, admitting Def.'s 56.1(a) Stmt. ¶ 19.) Thus, plaintiff's claim falls within the statute of frauds because the alleged contract could not be performed within a year.

### B. Exceptions to the Statute of Frauds

Plaintiff apparently recognizes that his alleged contract falls within the one-year provision of the statute of frauds because he raises two arguments, which he claims renders the statute of frauds inapplicable. First, plaintiff argues that the statute should not apply because he has substantially performed the alleged contract in reliance on the agreement. Second, plaintiff claims that defendant has waived its right to assert the statute of frauds as a defense.

The Illinois statute of frauds has no application where a party to an oral contract has substantially performed his part of the agreement. Dickens v. Quincy College Corp., 245 Ill. App.

5

3d 1055, 1061, 615 N.E.2d 381, 385 (4th Dist. 1993). However, "the doctrine of part performance [has] no application to an action at law for damages, and, hence, [can] not [] operate[] to take [an] alleged oral agreement out of the Statute of Frauds." Id. (citing Gibbons v. Stillwell, 149 Ill. App. 3d 411, 416-17, 500 N.E.2d 965, 969 (5th Dist. 1986). Therefore, "the fact plaintiff sought money damages in both counts precludes him from raising the partial performance exception to the statute of frauds." Dickens, 245 Ill. App. 3d at 1062, 615 N.E.2d at 385. See also Cain v. Cross, 293 Ill. App. 3d 255, 259, 687 N.E.2d 1141, 1144 (5th Dist. 1997) (citation omitted) ("We must reiterate 'the doctrine of part performance is not applicable in actions at law for monetary damages.'")

Plaintiff argues that the Illinois statute of frauds has no application where a party acknowledges the existence of the alleged agreement and its subject matter. Neither plaintiff nor defendant elucidates for this court what type of evidence can constitute waiver of the statute of frauds as a defense.[3] Thus, this court will review Illinois case law discussing waiver of the statute of frauds by acknowledging the existence and subject matter of a contract.

In Derby Meadows Utility Co. v. Inter-Continental Real Estate, 202 Ill. App. 3d 345, 559 N.E.2d 986 (1st Dist. 1990), the court, in analyzing the plaintiff's claim of waiver, evaluated the evidence to determine whether the defendant had made a judicial admission establishing the existence and subject matter of the alleged contract. The court also noted that Illinois Supreme Court Rule 212 allowed the use of discovery depositions to establish admissions to the same extent as any other admission made by that person. Id. The court determined that any admission regarding a contract and its subject matter must be "clear unequivocal and within that party's personal

---

[3] The court notes that the statute of frauds can be waived by failing to properly plead the statute as a defense, see Mapes v. Kalva Corp., 68 Ill. App. 3d 362, 366, 386 N.E.2d 148, 151 (2nd Dist. 1979), but this issue is not relevant here.

knowledge." Derby Meadows Utility Co. 202 Ill. App. 3d at 355, 559 N.E.2d at 992. The court ruled against the plaintiff's argument of waiver. First, the court ruled that defendant's admissions in the pleadings did not sufficiently establish that a contract existed. Id. Next, the court expressed doubt as to whether the plaintiff could utilize the deposition testimony of defendant's employee that was taken in separate litigation, but eventually decided that the defendant's reference to the agreement with plaintiff as a "deal" in a deposition, even if considered, "was not an unequivocal statement regarding the existence of a contract." Id. Accordingly, the court ruled that defendant had not waived the statute of frauds as a defense.

In making its decision, the court in Derby Meadows Utility Co. relied on two other Illinois Appellate Court cases finding that the defendant had waived the statute of frauds. See Whildin v. Kovacs, 93 Ill. App. 3d 582, 417 N.E.2d 736 (1st Dist. 1981); Haas v. Cravatta, 71 Ill. App. 3d 325, 389 N.E.2d 226 (2nd Dist. 1979). In both Whildin and Haas, the courts determined that the defendants had waived the statute of frauds as a defense because the defendants admitted the validity of the alleged contract in their pleadings. Whildin 93 Ill. App. 3d at 584, 417 N.E.2d at 737-78; Haas 71 Ill. App. 3d at 328-29, 389 N.E.2d at 229. See also McCollum v. Bennett, 98 Ill. App. 3d 80, 92, 424 N.E.2d 90, 92 (3rd Dist. 1981) (holding that defendant's response to plaintiff's request for admission of facts did not establish waiver of the statute of frauds because the admission did not reach the subject matter of the alleged agreement).

Plaintiff Dumas cites R.J.N. Corp. v. Connelly Food Products, Inc., 175 Ill. App. 3d 655, 529 N.E.2d 1184, 1189 (1st Dist. 1988), for the proposition that the statute of frauds can be waived. In R.J.N. Corp., the court found that the defendant had not waived the statute of frauds when it admitted that an oral agreement existed, but also denied the terms of that agreement in its answer to the

7

plaintiff's complaint. Thus, the court in R.J.N. Corp also relied on the pleadings to evaluate whether waiver had occurred. Plaintiff cites no cases where a court actually found waiver.

Based upon the foregoing, this court concludes that under Illinois law waiver of the statute of frauds as a defense can only be accomplished by an admission either in the pleadings, a request for admission, or otherwise during a judicial proceeding. To rule otherwise would substantially weaken the statute of frauds requirement of sufficient writings because a plaintiff who was unable to meet that requirement could simply argue that the writings (insufficient to satisfy the statute of frauds) established waiver. This court's concern about what evidence may establish waiver under Illinois law is heightened by the evidence presented by the plaintiff to establish his assertion that waiver has occurred here. As evidence of waiver, plaintiff sets forth a number of e-mails (which he also claims constitute the alleged written contract) and a recorded telephone conversation between himself and Case. Plaintiff does not point to testimony in depositions or admissions in pleadings or otherwise to establish his case of waiver. Thus, because, as discussed below, plaintiff is unable to meet the requirements of the statute of frauds he attempts to use the same evidence (in addition to parol evidence) to establish waiver. Given the paucity of plaintiff's evidence, this court does not necessarily have to decide what type of evidence will suffice to establish waiver under Illinois law. None of the evidence set forth by the plaintiff establishes that the defendant explicitly acknowledged the existence and subject matter of the alleged contract. Furthermore, this court does not believe that it can be reasonably inferred from any of the evidence offered by the plaintiff that the defendant acknowledges the existence and subject matter of the alleged contract.

Plaintiff does not cite to his statement of facts (or any exhibit) in his memorandum of law to support his suggestion that defendant acknowledged the alleged contract in an e-mail. However,

upon review of all the e-mails to which plaintiff refers in his 56.1(b) statement of additional facts, this court finds no e-mail from the defendant acknowledging the existence of a contract and its subject matter. Two e-mails indicate that the plaintiff and defendant engaged in preliminary negotiations regarding salary and "show format." (Pl.'s Ex. F at DUMAS 0035, DUMAS 0092-0093.) Preliminary negotiations, however, indicate that a contract does not yet exist. The e-mail that comes the closest to referring to an agreement, but not nearly close enough to establish that a contract existed is from Case to Dumas, dated June 04, 2002 at 3:09 p.m.: "We just finished meetings with corporate in Chicago. We can't do anything without a release. Verbal does not count for our legal team. Best of luck securing the paper work." (Pl.'s Ex. F at DUMAS 0026.) This e-mail simply does not acknowledge the existence of a contract, much less the subject matter of the contract. None of the e-mails put forth by the plaintiff establish that the defendant admitted the existence of a contract.

Plaintiff also argues that defendant's agent admitted the existence of a contract and its subject matter in a recorded telephone conversation. This telephone conversation is not properly before this court. Local Rule 56.1(b)(3)(B) requires that a non-moving party file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." Plaintiff does not mention a telephone conversation anywhere in his statement of facts. "Simply providing additional facts in one's responsive pleading is insufficient to put those facts before the Court." Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (providing a comprehensive overview of summary judgment procedures in the Northern District of Illinois). The plaintiff also does not direct this court to the location of the telephone conversation in his

memorandum of law. The telephone conversation, which this court discovered, is labeled "Ex F. Dumas 0040." This reference to "Ex. F. Dumas 0040" also does not appear anywhere in plaintiff's 56.1(b) statement of facts. The telephone conversation will not be considered because it is not before this court.[4] Accordingly, defendant has not waived the statute of frauds as a defense.

### C. Existence of a Writing Under the Statute of Frauds

"Two or more writings may satisfy the writing requirement of the statute [of frauds] so long as 'all the essential terms are stated with reasonable certainty and the documents are connected in such a way that they may be said to relate to the same contract.'" Trustmark Ins. Co. v. General Cologne Life Reinsurance, 2001 WL 1268539, at *7 (N.D. Ill. Oct. 22, 2001) (quoting Pillay v. G.C. Serv. Ltd., 1998 WL 242135, at *2 (N.D. Ill. May 6, 1998). Not all the writings need be signed, but the signed writings must either refer to the unsigned documents or the "several writings must be so connected, either physically or otherwise, that it may be determined by internal evidence that they relate to the same contract." Id. (quoting Sims v. Broughton, 589 N.E.2d 1056, 1059-60 (Ill. App. Ct. 1992). Finally, Illinois law prohibits courts from considering oral testimony to assist in meeting the writing requirement, because to do otherwise would "sap the statute of frauds of most of its force." Id. (quoting Cohabaco Cigar Co. v. United States Tobacco Co., 1999 WL 988805, at *4 (N.D. Ill. Oct. 22 1999)).

The written evidence put forth by the plaintiff consists of e-mails from Case. This court will

---

[4]Nevertheless, this court did undertake to listen to the recording of the telephone conversation. Nowhere in this recorded conversation did defendant's agent, presumably Case, admit the existence of a contract. In fact, Case in that conversation made it clear that all the necessary persons had not "signed off" on the proposed deal. Thus, even if this court were to consider the recorded phone conversation, it would not change this court's conclusion that defendant has not waived the statute of frauds as a defense.

assume, but need not decide, that Case had the power to bind defendant Infinity to a contract with plaintiff Dumas. For purposes of this motion, this court will also assume that all of the e-mails set forth by plaintiff are "signed" within the meaning of the statute of frauds. This court will not consider e-mails or other writings from when the plaintiff and defendant failed to conclude a contract in 2000, because these writings bear no connection to the issue of whether a contract was entered into in 2002.

After a careful review of all the documents set forth by the plaintiff, this court finds that they do not state the essential terms of the alleged contract with reasonable certainty. The e-mails set forth by the plaintiff are merely evidence of preliminary negotiations. On May 8, 2002, Case e-mailed Dumas regarding a potential salary. (Pl.'s Ex. F at DUMAS 0092.) Dumas responded that same day with his thought that "something in the 175 to 225 range seems right." (Pl.'s Ex. F at DUMAS 0093.) Neither of these writings establishes that a salary was ever actually agreed upon. Thus, these writings cannot establish to a reasonable certainty the salary of the alleged contract.

On May 20, 2002, Case e-mailed Dumas regarding a "format" for the proposed show (Pl.'s Ex F. at DUMAS 0035.) He tells Dumas: "Here is our formula for the AM show. How does this strike you." (Id.) There is no response from Dumas concerning this aspect of the alleged contract and no other writing to establish that this format was ever agreed upon. Thus, this aspect of the alleged contract is not stated with a reasonable certainty by the writings. This conclusion is not changed even if this court were to accept plaintiff's argument that Case's May 28, 2002 e-mail to Dan Mason (an employee of defendant Infinity) should be considered as evidence of the contract. This e-mail simply sets forth different formats for the defendant's morning show depending upon

11

whether the plaintiff becomes an employee. (Pl.'s Ex. G at "May 28, 2002 e-mail".)[5]

Finally, plaintiff submitted an e-mail from Case to Dumas written on April 29, 2002, that raises a number of issues relevant to a possible employment situation. (Pl.'s Ex. F at DUMAS 0033.) Case beings this discussion by stating: "Here are things we must discuss" and ends the e-mail with: "We had good meetings the first time we met... lets see if the chemistry is still real. Talk to you soon. Get me some tape." (Id.) There is no response to this e-mail in evidence. This e-mail cannot establish to a reasonable certainty the essential terms of the alleged contract. The remaining e-mails do not set forth any contract terms whatsoever.[6] Consequently, this court finds that these documents do not satisfy the statute's writing requirement.

   III.   Promissory Estoppel

During the latter part of the last century, there was an ongoing debate in both the state and federal courts of Illinois, including the Seventh Circuit, about whether Illinois law applied the statute of frauds to bar a promissory estoppel claim that was based on the same facts as a breach of contract claim barred by the statute of frauds. See Goldstick v. ICM Realty, 788 F.2d 456, 464-66 (7th Cir. 1986). In Goldstick, the Seventh Circuit "guess[ed] (a word used deliberately) that [the Illinois Supreme Court] would hold the statute of frauds applicable to promissory estoppel (since to do otherwise would require the court to overrule two of its decisions)." Id. at 466. Then, in Architectural Metal Inc. v. Consolidated Inc., 58 F.3d 1227, 1231 (7th Cir. 1995), the Seventh

---

[5]Plaintiff does not provide a direct page citation, as required by the local rules, to this piece of evidence. Thus, this piece of evidence is not properly before the court. The evidence is part of plaintiff's Exhibit G and is the only e-mail sent on May 28, 2002.

[6]For example, on June 6, 2003, Case states: "We are talking with corporate today. Making plans for what to do. I hope you get this release soon. I don't want to miss out any options." (Pl.'s Ex. F at Dumas 0021).

Circuit stated "the view tentatively adopted in [Goldstick has] since [been] confirmed by two decisions of the Illinois Appellate Court." These two decisions are: First National Bank v. McBride Chevrolet, Inc, 267 Ill. App. 3d 367, 642 N.E.2d 138, 142 (4th Dist. 1994), and Dickens v. Quincy College Corp., 245 Ill. App. 3d 1055, 615 N.E.2d 381, 386 (4th Dist. 1993), which both directly held that the statute of frauds applies to promissory estoppel claims. See also Cohn v. Checker Motors Corp., 233 Ill. App. 3d 839, 599 N.E.2d 1112, 1117 (1st Dist. 1992) (concluding that the statute of frauds applies to promissory estoppel claims).

Finally, in Fischer v. First Chicago Capital Markets, Inc., 195 F.3d 279, 284, (7th Cir. 1999) the Seventh Circuit held that "[u]nder Illinois law, the statute of frauds is applicable to a promise claimed to be enforceable by virtue of the doctrine of promissory estoppel." This ruling by the Seventh Circuit was consistent with a number of Northern District of Illinois Courts, which have also held that Illinois law applies the statute of frauds to promissory estoppel claims. See Cohabaco Cigar Co. v. United States Tobacco Co., 1999 WL 98805, at *7 (N.D. Ill. Oct. 22, 1999) (Kocoras, C.J.); Barrett v. Poag & Mcewen Lifestyle Centers-Deer Park Town Center, 1999 WL 691850, at *11 (N.D. Ill. Aug. 26, 1999) (Gottschall, J.); Peoria Assoc. Ltd. P'ship v. Best Buy Co., 995 F. Supp. 823, 824 (N.D. Ill. 1997) (Aspen, C.J.); Marber v. Roosevelt University, 1997 WL 754025, at *3 (N.D. Ill. Nov. 19, 1997) (Coar, J.); Haas Auto. Imports, Inc. v. Lola Cars Ltd., 933 F. Supp. 1381, 1390 (N.D. Ill. 1996) (Shadur, J.); Brook v. Coreq, Inc. 1994 WL 444798, at *6 (N.D. Ill. Aug. 5, 1994) (Duff J.) Evans v. Fluor Distribution Co.s, 1985 WL 1998 (N.D. Ill. June 28, 1985) (Holderman, J.). Plaintiff points to no Illinois cases to dispute the heavy weight of authority within the Illinois courts, this district, and the Seventh Circuit, which have held that the statute of frauds applies to claims of promissory estoppel.

13

The two older cases cited by plaintiff do not directly address this issue. Plaintiff cites to Derby Meadows Util. Co. v. Inter-Continental Real Estate, 202 Ill. App. 3d 345, 559 N.E.2d 986 (1st Dist. 1990), and Gold v. Dubish, 193 Ill. App. 3d 339, 549 N.E.2d 660 (5th Dist. 1989) and argues that "both cases hold[] plaintiffs could successfully raise promissory estoppel claims despite a Statute of Frauds defense" (Pl.'s Resp. at 8). Neither of these cases, however, directly addressed the issue of whether the statute of frauds applies to bar a promissory estoppel claim. Derby Meadows Util Co., 202 Ill. App. 3d at 361, 559 N.E.2d at 995 (never discussing the interplay between the statute of frauds and promissory estoppel, but reversing the district court's ruling which rejected a promissory estoppel claim "solely on the basis of the pleadings" because "taken as true, [the pleadings] were sufficient to state a cause of action for promissory estoppel"); Gold, 193 Ill. App. 3d at 345-53, 549 N.E.2d at 662-67 (never discussing the interplay between the Statute of Frauds and promissory estoppel); see also Brook v. Coreq, Inc. 1994 WL 444798, at *6 (N.D. Ill. Aug. 5, 1994) (Duff J.) (Derby and Gold are "cases in which the issue of whether the Statute of Frauds bars a claim for promissory estoppel was not directly addressed."). Plaintiff also cites Leekha v. Wentcher, 224 Ill. App. 3d 342, 351-52, 586 N.E.2d 557, 563 (1st Dist. 1991), which also never discusses the issue of whether the statute of frauds precludes a promissory estoppel claim, but merely affirms the trial court's dismissal of a promissory estoppel claim because the plaintiff's acts were not sufficient to state a claim. This court is persuaded by the more recent Illinois cases that directly hold that the statute of frauds applies to claims of promissory estoppel.

Plaintiff also cites to two Northern District opinions which he alleges stand for the proposition that the statute of frauds does not apply to his promissory estoppel claim. See Genin v. Integra Dev. Int'l, 845 F. Supp. 611, 616-19 (N.D. Ill. 1994) (Plunkett, J.); Michaels Corp. v. Trans

14

World Metals, 1987 WL 14010 (N.D. Ill. July 14, 1987) (Getzendanner, J.). The court in Michaels Corp., first noting that Illinois law was unclear on the issue of whether the statute of frauds applies to promissory estoppel claims, found that "whether labeled 'promissory' or 'equitable estoppel' . . . the complaint [in that case] allege[d] facts sufficient to bring it within the scope of conduct found actionable in" Ceres Illinois v. Illinois Scrap Processing, 114 Ill.2d 133, 500 N.E.2d 1 (1986) (broadening the definition of equitable estoppel by loosening the definition of material misrepresentation). Michaels Corp., 1987 WL 14010, at *3. In doing so, the court in Michaels Corp. also stated that "[i]t appears . . . that the theory of equitable estoppel has been stretched [by the Illinois Supreme Court] to encompass some promissory-type claims. Id. at *2. The court in Genin, also ruling on a motion to dismiss, cited to Michaels Corp., and similarly found that "the allegations [in the complaint, even though labeled promissory estoppel] are more than sufficient to fall within the Ceres definition of equitable estoppel." Genin 845 F. Supp. at 619.

These cases are inapposite to plaintiff's argument. Both of these courts were considering a motion to dismiss, and neither court considered the Illinois Appellate Court decisions of First National Bank, and Dickens, which, as previously discussed, have been interpreted by the Seventh Circuit as confirming the position that Illinois law applies the statute of frauds to promissory estoppel claims. Architectural Metal Inc., 58 F.3d at 1231. Thus, the courts in both Genin and Michaels Corp. were faced with uncertain Illinois law regarding the application of the statute of frauds to promissory estoppel claims and the liberal standard governing a motion to dismiss when they ruled. Furthermore, Michaels Corp.'s assertion that equitable estoppel was stretched to include

15

some promissory estoppel claims was without any direct support from the Illinois courts[7], and, plaintiff is unable to cite any Illinois case adopting the assertion in Michaels Corp.. In the sixteen years since Michaels Corp. was decided the Illinois courts, the courts of this district, and the Seventh Circuit have clarified that the statute of frauds acts as a bar to a promissory estoppel claim.

It is true that Illinois law does not apply the statute of frauds to equitable estoppel claims. See Genin, 845 F. Supp. at 616. However, plaintiff has never alleged a claim for equitable estoppel, and even now maintains that his claim is for promissory estoppel.[8] In furtherance of that position plaintiff argues that Michaels Corp. and Genin stand for the proposition that Illinois law does not apply the statute of frauds to promissory estoppel claims. As discussed above, this position cannot be maintained.

Accordingly, Infinity is granted summary judgment on Dumas's promissory estoppel claim

---

[7]The court in Michaels Corp. was interpreting the Illinois Supreme Court's then recent decision in Ceres for the proposition that Illinois law had stretched equitable estoppel to include some promissory estoppel type claims. But see Goldstick v. ICM Realty, 788 F.2d 456, 465 (7th Cir. 1986)("*Ceres* must give some pause to anyone who argues that the Illinois Supreme Court really would be willing to reconsider . . . its old cases holding the statute of frauds applicable to claims of promissory estoppel..").

[8]The court notes that it could not in fairness allow plaintiff, even if he did ask, to change his claim from promissory estoppel to equitable estoppel via his brief in opposition to defendant's motion to dismiss. Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002)(citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996)); see also Cohabaco Cigar Co. v. United States Tobacco Co., 1999 WL 988805, at *10 (N.D. Ill. Oct. 22, 1999) (Kocoras, J.) ("The Court . . . declines to aid [plaintiff] by analyzing its promissory estoppel claim as an equitable estoppel case. [Plaintiff] has had many opportunities to amend its complaint, and [plaintiff] has chosen to present its claim as a promissory estoppel claim and not as an equitable estoppel claim. Despite this, [plaintiff] argues that because its factual allegations could possibly also support a claim for equitable estoppel, the Court should consider an equitable estoppel claim. Nonetheless, the Court will choose not to address a complaint [plaintiff] has chosen not to make.").

16

because this claim is not available to avoid the statute of frauds.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, terminating this case. Any pending motions are moot.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: December 17, 2003

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
Eastern Division

DUMAS

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 03 C 4713

INFINITY BROADCASTING

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that summary judgment is entered in favor of defendants Infinity Broadcasting et al and against plaintiff Dumas. This action is dismissed in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 12/17/2003

J. Smith, Deputy Clerk